# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:23-CV-00861-KDB

| | |
|---|---|
| **YOLANDA CASH,** **Plaintiff,** v. **COMMISSIONER OF SOCIAL SECURITY,** **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Yolanda Cash's Complaint (Doc. No. 1), Plaintiff's Opening Brief (Doc. No. 6), Defendant Commissioner's Brief (Doc. No. 7), and Plaintiff's Reply Brief (Doc. No. 9). Cash seeks judicial review of an unfavorable administrative decision denying her application for disability benefits under the Social Security Act. The Court has carefully considered the motion, the parties' briefs, the administrative record, and the applicable legal authority. For the reasons discussed below, the Court will **DENY** Plaintiff's judicial appeal of the Commissioner's decision and **AFFIRM** the Commissioner's decision.

## I.  LEGAL STANDARD

The legal standard for the Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The

1

agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151–52, 203 L. Ed. 2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla.[1] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, the Court does not review a final decision of the Commissioner *de novo*, see *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence," *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[1] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty . . . lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' . . . [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' . . . To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards . . . but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

Thus, the Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.* (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. That is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding the limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## II. FACTS AND PROCEDURAL HISTORY

On December 21, 2021, Cash filed an application for a period of disability and disability insurance benefits, as well as supplemental security income, alleging that she had been disabled since November 15, 2021. (AR 17). Her application was denied on its first review and then again upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Cash's application in a decision dated April 25, 2023. (AR 17–32). Because the Appeals Council denied Cash's request for review, the ALJ's decision is the final decision of the Commissioner. (AR 1). Plaintiff timely sought judicial review of that decision under 42 U.S.C. § 405(g). (Doc. No. 1).

### 1. The Commissioner's Decision

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Cash was disabled under the law during the relevant period.[2] The ALJ confirmed at step one that Cash had not engaged in substantial activity since November 15, 2021. (AR 20).

At step two, the ALJ found that Cash had medically determinable impairments that significantly limit her ability to perform basic work activities. These impairments included "degenerative disc disease; arthritis; gout; congestive heart failure; hypertension; atrial fibrillation; major depressive disorder; generalized anxiety disorder; headaches; diabetes mellitus; sleep apnea; left wrist pain, status-post remote fracture; dyslipidemia; [and] obesity (20 CFR 404.1520(c) and 416.920(c))." (AR 20). The ALJ noted that Cash's other alleged severe impairment, post-traumatic stress disorder ("PTSD"), was not supported by the evidence. *Id.*

At step three, the ALJ nevertheless determined that Cash's impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.*

Before proceeding to step four, the ALJ found that Cash retained the following residual functional capacity ("RFC"):

---

[2] The five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)–(g) and 404.1520(a)–(g). The claimant has the burden of production and proof in the first four steps, but at step five, the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following provisos: she can occasionally reach in all directions, push, pull, operate hand controls, handle, finger, and feel with the non-dominant, left upper extremity; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to noise, further defined to mean maximum noise rating of 3 according to Selected Characteristics of Occupations (SCO), which is moderate; avoid concentrated exposure to vibration; avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation and the like. Avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. She is able to understand and perform simple, routine, repetitive, tasks, and can maintain concentration, persistence, and pace to stay on task for 2 hour periods over the course of a typical 8-hour workday with normal breaks in order to perform such tasks; in a low stress setting, further defined to mean no production-pace or quota-based work; rather, she requires a goal-oriented job primarily dealing with things instead of people, with no more than occasional social interaction as part of job with supervisors, co-workers and/or the public.

(AR 25). The ALJ reviewed Cash's medical history and found that her determinable impairments could reasonably be expected to cause the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not persuasive of disability based upon the medical and other evidence in the record, for the reasons explained in [the] decision." (AR 27). Next, the ALJ evaluated a series of factors, including Cash's daily activities, symptoms, precipitating and aggravating factors, medications and treatments, and other details concerning her functional limitations due to pain and other symptoms. *Id.* The ALJ then considered prior medical opinions and administrative medical findings, referencing evidence from the record to assign a level of persuasive value to each finding. (AR 28–29).

At step four, the ALJ found that Cash was unable to perform her past relevant work as a residential care aide and home attendant. (AR 29).

At step five, the ALJ ultimately concluded that there were other jobs existing in significant numbers in the national economy that Cash could perform based on her age, education, work experience, and RFC. (AR 30). These jobs included inspector, garment sorter, and marker. *Id.* In

5

sum, the ALJ found that Cash was not disabled under the Social Security Act from November 15, 2021, through the date of the decision. (AR 32).

## III. DISCUSSION

Cash argues that the ALJ made three errors. First, she asserts that the ALJ failed to develop the administrative record adequately, as he did not explain how the moderate mental limitations outlined in his RFC finding fully reflect Cash's deficit in concentration, persistence, or pace. (Doc. No. 6, at 6). Second, Cash argues that the ALJ did not follow the proper legal standard when determining her RFC because he did not consider the supportability of her treating therapist's medical opinion. *Id.* Third, Cash contends that the ALJ erred in neglecting to address the frequency and severity of her headaches in formulating his RFC finding, suggesting that substantial evidence did not support the ALJ's decision. *Id.*

### A. The ALJ's Duty to Develop the Record

Cash argues that the ALJ erred because he did not provide a sufficient explanation showing that the limitations reflected in his RFC finding account for her deficits in concentration, persistence, and pace. (Doc. No. 6, at 6–7). However, the Court finds that the ALJ properly developed the record, and that substantial evidence supports his RFC determination that Cash is moderately limited in concentrating, persisting, and maintaining pace. (AR 25).

The Fourth Circuit has held that "remand is appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Additionally, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631

6

F.3d 1176, 1180 (11th Cir. 2011)). Yet, there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC," and an ALJ may explain why a moderate limitation in this area does not show up as a limitation in the RFC. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020).

Here, the ALJ reviewed Cash's treatment notes regarding her mental impairments and assessed her degree of limitation under four categories of mental function.[3] (AR 24). Although Cash reported self-harm thoughts and fatigue, she also testified to receiving mental health treatment thrice weekly and stated that the treatment was helpful. *Id.* She endorsed continued anxiety and depression *related* to losing her job, experiencing financial issues, and suffering chronic pain—namely, situational stressors that improved when Cash found employment or attended counseling that "[kept her] out of the house to talk to people." (AR 24, 50–51, 731–42). And, while Cash maintained that she struggled to get out of bed most days, she also provided care for her three grandchildren while her daughter worked. (AR 24). Moreover, Cash was "not nervous or anxious" and was "oriented to person, place, and time" during her recent medical visits. *Id.* Indeed, Cash was able to work full-time for roughly four months from late 2022 to early 2023, despite her alleged mental health impairments, and encountered difficulty performing her job solely due to her physical limitations. (AR 29). Overall, Cash's treatment notes suggest relative stability with some improvement in her mental health, supporting the ALJ's determination that Cash's mental impairments do not cause "marked" or "extreme" limitations. (AR 24).

---

[3] Paragraph B of each listing of impairment (except intellectual disorders) requires evaluation of criteria under four main areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.00(A)(2)(b).

Cash acknowledges that the ALJ's RFC finding accounts for her concentration, persistence, and pace issues but nevertheless contends that it is "unsupported by any explanation." (Doc. No. 6, at 10). She further argues that the ALJ was "not relying on opinion evidence" to justify his RFC finding when he found that the state agency psychologist's medical opinion was partially unpersuasive; thus, he failed to explain how he "went from the evidence and the finding of a moderate limitation in concentration, persistence, or pace to the RFC finding." (Doc. No. 6, at 13). In other words, Cash suggests that the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion" in his RFC analysis. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

Cash cites *Tucker v. Saul* to support her main contention that the ALJ's RFC finding "just left in place the standard work schedule" without explaining why she "could meet the demands of such a schedule despite her moderate deficit in [concentration, persistence, and pace]." (Doc. No. 6, at 10–11); *Tucker v. Saul*, No. 1:18CV481, 2019 WL 3581795 at *6 (M.D.N.C. Aug. 6, 2019). The *Tucker* court utilized the following RFC finding as an example of one which properly addressed a plaintiff's deficit in concentrating, persisting, and maintaining pace—and, notably, it is nearly identical to Cash's RFC:

> The ALJ's RFC explicitly limits [the p]laintiff's ability to maintain CPP and stay on task to two-hour periods of time. [The p]laintiff contends that such a finding amounts to no restriction because it effectively treats [the p]laintiff as if she could stay on task for an eight-hour workday because customary work breaks occur approximately every two hours. **However, the ALJ did not find that [the p]laintiff maintained the ability to stay on task for two-hour periods to perform all manner of work; rather, the ALJ found that [the p]laintiff could stay on task for two-hour blocks of time only when performing SRRTs [simple, routine, repetitive tasks] in a low stress work setting, which, in addition to the nature of the work being performed, [wa]s further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job** . . . Thus, the ALJ clearly did include

a limitation in the RFC to account for the state agency psychological consultants' [] opinion[s] regarding [the p]laintiff's ability to maintain concentration.

*Id.* (emphasis added) (quoting *Scott v. Berryhill*, No. 1:16CV48, 2017 WL 500000, at *5 (M.D.N.C. Feb. 7, 2017)). Similarly, Cash's RFC finding provides:

> She is able to understand and perform **simple, routine, repetitive, tasks, and can maintain concentration, persistence, and pace to stay on task for 2 hour periods over the course of a typical 8-hour workday with normal breaks in order to perform such tasks; in a low stress setting, further defined to mean no production-pace or quota-based work; rather, she requires a goal-oriented job primarily dealing with things instead of people, with no more than occasional social interaction as part of job with supervisors, co-workers and/or the public**.

(AR 25) (emphasis added). Still, Cash maintains that because the ALJ left "production-pace" undefined in his RFC, it is "difficult, if not impossible," for the Court to assess whether substantial evidence supports his analysis. (Doc. No. 6, at 11–12). Again, an ALJ's RFC analysis is sufficient so long as it contains a reasonably discernable rationale that allows the Court to conduct a meaningful review. *See Alaska Dep't Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004). Accordingly, the ALJ's use of the term "production-pace" is not so ambiguous in this context as to frustrate meaningful review and necessitate remand.

Furthermore, as an independent reason to affirm the ALJ's decision regarding this point, none of the jobs on which the ALJ relied at step five to conclude Cash was not disabled involves a "production" setting. (AR 30). Thus, the "production" limitation was practically irrelevant to the ALJ's ultimate decision and would constitute harmless error, if it was error at all. *See Shinseki v. Sanders*, 556 U.S. 396, 407–10 (2009) (requiring the party attacking an administrative decision to prove that an error harmed her case). Therefore, the Court finds that the ALJ properly developed the record with respect to Cash's mental impairments, specifically her deficits in concentrating, persisting, and maintaining pace, and their impact on the limitations outlined in his RFC finding.

9

### B. The ALJ's Requirement to Consider a Medical Opinion's Supportability

Next, Cash alleges that the ALJ failed to explain how he considered the supportability of the medical opinion of her licensed clinical social worker ("LCSW"), Cristina De Aguilar, in formulating his RFC finding. The Court finds, however, that the ALJ did not err when conducting Cash's RFC analysis and properly evaluated Ms. De Aguilar's medical opinion.

When considering medical opinions and prior administrative medical findings, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Instead, the ALJ will consider the persuasiveness of the medical opinion(s) and prior administrative medical finding(s) under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* The supportability and consistency factors[4] are the most important in determining a medical opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2) (2017). Thus, if a "physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's

---

[4] The first two factors are defined as: (1) <u>Supportability:</u> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(1) (2017). (2) <u>Consistency:</u> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(2) (2017).

10

rejection of treating physician's opinion because the record contained persuasive contradictory evidence and the treating physician's own notes contradicted his opinion)).

Here, the ALJ assessed the persuasiveness of Ms. De Aguilar's medical opinion and determined that the record evidence did not support her finding that Cash's mental impairments caused "marked limitations" in her functioning. (AR 28–29). Referencing the supportability of Ms. De Aguilar's medical opinion directly, the ALJ acknowledged that she "ma[de] notes to explain [Cash's] limitations," but stated that "[those] marked limitations are not supported by the evidence." (AR 29). The ALJ then detailed the record evidence that conflicted with Ms. De Aguilar's findings, including her own treatment note from January 2023, which indicated Cash's "coherent" cognition, active participation and cooperation with therapy. (AR 29, 853). Furthermore, the ALJ noted that Cash responded well to treatment, she was able to work for several months in the latter part of 2022, and she was able to care for her grandchildren while her daughter worked (ostensibly providing childcare on at least a weekly, if not daily, basis). (AR 24, 29). Yet, despite Cash's ability to provide regular care for her grandchildren, Ms. De Aguilar noted that Cash was "markedly restricted in the ability to care of [sic] manage herself." (AR 28). Moreover, Ms. De Aguilar's own notes contradicted much of her medical opinion; for instance, she opined that Cash was "not limited in short- or long-term memory" but was "markedly limited in remembering locations and work-like procedures." (AR 28–29).

Cash argues that the ALJ "never looked at the opinion inwardly and considered what Ms. De Aguilar offered as an explanation supporting her opinion." (Doc. No. 6, at 18). However, the ALJ acknowledged Ms. De Aguilar's reasoning behind her opinion, explaining that "[w]hile the overall evidence does show continued depression and stress and feeling overwhelmed," the record otherwise reflected relative stability in her mental health. (AR 29, 373). In evaluating Cash's

11

treatment history and the objective medical evidence, the ALJ did not concur with Ms. De Aguilar's opinion and provided a sufficient narrative explanation to support his assessment. (AR 28–29). Following his thorough discussion of Ms. De Aguilar's findings, the ALJ concluded that Cash's most recent mental health notes, showing her improved condition and her ability to care for her grandchildren, were consistent with "no more than moderate mental health limitations." (AR 29). Likewise, the ALJ adequately explained the inconsistencies in the record when determining that Ms. De Aguilar's medical opinion was unpersuasive, which Cash concedes. (Doc. No. 6, at 15). Therefore, the Court finds that the ALJ adequately considered the supportability *and* consistency of Ms. De Aguilar's medical opinion.

### C. The ALJ's Obligation to Base RFC Limitations on Substantial Evidence

Finally, Cash asserts that the ALJ did not address the frequency and severity of Cash's alleged headaches or explain how he considered them in his RFC finding. The Court disagrees, finding that the ALJ adequately accounted for Cash's reported headaches in his RFC analysis.

A Social Security claimant's RFC must be based on all the evidence, accurately set forth all demonstrated impairments and limitations, and describe the claimant's maximum ability to perform sustained full-time work. *See* 20 C.F.R. § 404.1545(a); SSR 96-8p (defining the ability to work as the ability to do so "8 hours a day, 5 days a week . . . on a regular and continuous basis"). Significantly, all a claimant's impairments, even impairments found not severe, must be considered when formulating an RFC. § 404.1545(e). In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record.[5] *See* SSR

---

[5] Per SSR 16-3p, the ALJ evaluates the intensity and persistence of an individual's symptoms, such as pain, and determines the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult. The ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity,

12

16-3p. However, there is no "rigid requirement" that an ALJ specifically reference every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). The ALJ is not required to provide "an exhaustive point-by-point breakdown of each and every listed impairment . . . [r]ather, the ALJ is compelled to provide a coherent basis for his step-three determination." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). Likewise, an ALJ is not obligated to accept a plaintiff's subjective reports of limitations. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); *Mastro*, 270 F.3d at 178. Thus, the Court must "read the ALJ's decision as a whole," and "an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis." *Keene*, 732 F. App'x at 177.

Here, the ALJ acknowledged Cash's reported headaches as contributing to her impairments. (AR. 26). He also discussed her presentation to Gregory Griffin, D.O., a consultative examiner, who noted Cash's headaches at her evaluation in March 2022. (AR 28). During her visit with Dr. Griffin, she had alleged that her headaches "happen 3-4 times a day, last for 30 minutes [and are] made better with pain medication." (AR 28, 522–523). The ALJ also referenced Cash's "minimal mention of headaches" in the record evidence, specifying that she complained of intermittent headaches during an October 2022 hospital visit in which she presented primarily for hypertension. (AR 22). Furthermore, the ALJ noted that Cash worked full-time from approximately September 2022 to January 2023, a time span which includes the aforementioned medical visit where she reported severe headache symptoms. (AR 25–27, 372, 714). Thus, the ALJ

---

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record, such as the claimant's activities and past or current treatment. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

13

considered Cash's activities, medical records, and treatment when evaluating her subjective complaints. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Additionally, the ALJ's RFC finding includes limitations on exposure to noise, vibration, and workplace hazards, which "track the [S]tate agency doctors' opined limitations related to headaches and addresses the environmental limits suggested by the consultative examiner." (Doc. No. 6, at 22; AR 25, 71, 529). Even so, Cash argues that the ALJ erred because he did not explain the connection between the Cash's headaches, the doctors' medical opinions, and his RFC finding. More specifically, Cash states the ALJ's RFC finding only addresses factors aggravating her headaches,[6] rather than their occurrence generally. (Doc. No. 6, at 22). Cash cites *Woody v. Kijakazi* to support her contention that the ALJ failed to adequately explain why his RFC limitations account for the frequency and intensity of her headaches. *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). However, *Woody* is distinct from this case; for example, the record in that case did not establish whether that Plaintiff's headaches remained severe enough to cause her to be absent from work when they occurred. *Id.* Here, Cash worked full-time for roughly four months, during the time period in which she reported ongoing headaches, but no evidence suggests that her headaches precluded her from continuing in that role. (AR 20). In fact, she testified that she was unable to perform her job duties because "the job required 12 hours of standing and her blood pressure elevated, she had swollen feet, and a backache while she tried to work." *Id.* Unlike in *Woody*, the instant case's record evidence confirms that Cash's

---

[6] Cash argues that, viewing the Vocational Expert's testimony in conjunction with her history of headaches, she would not be able to sustain competitive employment if off task for more than 10% of the eight-hour workday. However, the ALJ found the opinion of James A. Brown, Ph.D., the State agency provider, partially persuasive and adopted his headache-related limitations. Thus, the Court need not weigh the evidence again, nor substitute its judgment for that of the Commissioner's final decision where it is supported by substantial evidence. *See Hays*, 907 F.2d at 1456.

14

Case 3:23-cv-00861-KDB   Document 10   Filed 07/02/24   Page 14 of 15

inability to maintain her prior employment was unrelated to her headaches or their severity. *Woody*, 2023 WL 5745359, at *1. Thus, the ALJ adequately considered the frequency and intensity of her headaches as presented in the record, and adopted the State agency psychologist's prescribed limitations based on Cash's reported symptoms.

In sum, after a careful review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and that the ALJ built "an accurate and logical bridge from the evidence to [his] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Therefore, the ALJ's decision will be affirmed.

## IV. ORDER

It is therefore ordered that the Commissioner's decision is **AFFIRMED** and the Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED.**

**SO ORDERED.**

Signed: July 1, 2024

Kenneth D. Bell
United States District Judge

15

Case 3:23-cv-00861-KDB  Document 10  Filed 07/02/24  Page 15 of 15